

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-018-CV

JEFFREY IRWIN SUGGS                                          APPELLANT

V.

DESIREE LANELLE SUGGS                                          APPELLEE

------------

## FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

This appeal stems from the divorce of Appellant Jeffrey Irwin Suggs and

Appellee Desiree Lanelle Suggs. In three issues, Jeff complains about child support,

the division and characterization of the community estate, and the imposition of a

lien on his separate property. Because we hold that the trial court did not err or

abuse its discretion, we affirm the trial court's judgment.

**Background Facts**

------------

[1] ... *See* Tex. R. App. P. 47.4.

The couple has two minor children; child support is the only child-related issue on appeal. Jeff runs his own business, North Texas Frame and Alignment, in buildings and on land that he purchased from his father before the marriage. At issue are the characterization and value of the business as well as the community's claim against Jeff's separate estate for payments made by the community on the note for the separate real property from which Jeff operates the business.

**No Findings of Fact and Conclusions of Law**

No findings of fact and conclusions of law were filed or requested. In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it.[2] When a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues.[3] Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of

---

[2] _Pharo v. Chambers County_, 922 S.W.2d 945, 948 (Tex. 1996); _In re Estate of Rhea_, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.).

[3] Tex. R. App. P. 34.6(c)(4); _BMC Software Belg., N.V. v. Marchand_, 83 S.W.3d 789, 795 (Tex. 2002); _Estate of Rhea_, 257 S.W.3d at 790.

fact.[4]  The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence.[5]

**The Business**

In his first issue, Jeff contends that the trial court abused its discretion in dividing the community estate, focusing on the business.  Initially, Jeff contends that the trial court improperly characterized the business as community property instead of his separate property.  "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."[6]  This presumption can be rebutted by clear and convincing evidence.[7]  Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[8]  If the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails.[9]

---

[4] _Roberson v. Robinson_, 768 S.W.2d 280, 281 (Tex. 1989).

[5] _Worford v. Stamper_, 801 S.W.2d 108, 109 (Tex. 1990); _In re Guardianship of Boatsman_, 266 S.W.3d 80, 85 (Tex. App.—Fort Worth 2008, no pet.).

[6] Tex. Fam. Code Ann. § 3.003(a) (Vernon 2006).

[7] _Id._ § 3.003(b).

[8] _Id._ § 101.007 (Vernon 2008); _Transp. Ins. Co. v. Moriel_, 879 S.W.2d 10, 31 (Tex. 1994).

[9] _Estate of Hanau v. Hanau_, 730 S.W.2d 663, 667 (Tex. 1987).

Desiree discussed the business:

A.   All the shop tools; it's power lifts, the jack—not hammers, but—it's a head rack, arches and springs. It has a frame alignment machine; it has a compressor, Matco tools, the nice ones; all the tools that's in it, several hoses, different items that were used in his shop, that were originally purchased with a shop loan. And some of it had been purchased since then.

Q.   And so is it your understanding that at the time that he purchased the real property that he purchased the equipment, as well?

A.   Yes, ma'am.

Q.   As a matter of fact, is there a UCC security agreement showing—

A.   Yes, ma'am.

Q.   —tools in his name—

A.   Yes, ma'am.

Q.   —large equipment?

     Does he also have some retained earnings according to his inventory—

A.   Yes.

Q.   —documents?

     . . . Has Jeff ever made any representations to you about the value of that business?

A.   He has said it's worth over four, so about $300,000.00.

Q.   So you believe that there is value other than just the real estate?

A.   Oh, yes, ma'am.

4

. . . .

Q. Where did you come up with this value of $62,500.00 on his business?

A. On this business, or on the tools and—

Q. I don't know.

You listed it on your sworn inventory as North Texas Frame & Alignment; $62,500.00?

A. That would be parts, tools, and machinery inside.

We took an amount based on the low 50 and the high 75, and cut it in half because of—some of those—

To replace the alignment —alignment machine and the toolbox, all the tools that's in it, the press, the air jacks, all of the equipment that is in there, air hoses, impact machine compressor, all of those items, and every tool that's in that shop that belongs to North Texas Frame & Alignment, Jeff Suggs, would be impossible.

Q. Okay.

A. That was our guesstimation.

Q. Well, and what did you base that guesstimation upon?

What knowledge do you have that let's you determine the cost of those kinds of tools?

A. Just different things. We went on-line, and information—

Q. So basically—

A. —Jeff has told me in the past.

Q. Okay. Basically, you and your lawyer came up with that number; right?

5

A.  That is the information Jeffrey and I had discussed in the past. Desiree also testified that she believed that Jeff owned the business, that Jeff purchased the business when his father filed for bankruptcy, and that she had never seen any evidence that Jeff's father owned any of the equipment or any portion of the business.

Jeff testified that he bought the business in December 1995, before the marriage and after his father had declared bankruptcy; Jeff got a loan to pay off the loan his father had of around $83,000. Jeff testified that he has run the business since that time. But then he stated that he bought only the buildings and real estate; the equipment was all his father's, and his father had installed it in 1983. Jeff then stated, "I totally refurbished it; not in the top of the line or nothing." He then again stated that the equipment belongs to his father but that he owes his father "for it later on" when he "pays everything off." Later, Jeff testified that he has never paid rent for the tools but that he is "supposed to."

Jeff also admitted that some of the equipment appears on a security agreement for a loan and that he signed the agreement, but he claimed bank error. Petitioner's Exhibit 11, a UCC statement signed by Jeff, includes an asset schedule showing that tools and equipment with a cost basis of $8,610 and vehicles with a cost basis of $22,074 were put into service after the date of the marriage.

Jeff's father did not testify.

6

Given all the evidence, we cannot conclude that the trial court erred by characterizing the business as community property.

Jeff also contends that no evidence supports the valuation of the business. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.[10] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[11]

Again, Jeff did not request findings of fact and conclusions of law, so we do not know what value the trial court attributed to the business. Given Desiree's testimony explaining how she arrived at the value of $62,500 for the business, however, we cannot conclude that the trial court abused its discretion to the extent that it also valued the business at $62,500.

---

[10] *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).

[11] *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Finally, Jeff complains that the trial court should have divided the community estate in a different manner to eliminate the need for Jeff to pay Desiree in cash. Trial courts are afforded wide discretion in dividing marital property upon divorce; therefore, a trial court's property division may not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion.[12] The issue therefore is not whether the trial court could have divided the estate without requiring Jeff to pay Desiree in cash but whether some probative evidence supports the trial court's decision.[13] The evidence shows that the community estate paid $52,000 on Jeff's separate real estate note and that Jeff had between $124,000 and $130,000 equity in his separate real estate. Further, Jeff stipulated that the community had a $109,032 claim against his separate estate. Accordingly, we hold that the trial court did not abuse its discretion by ordering Jeff to pay Desiree in cash. We overrule Jeff's first issue.

**Lien on Separate Property**

In his second issue, Jeff contends that the trial court erred by imposing an encumbrance on his separate property to secure Jeff's payment of $37,700 to Desiree. As the Texas Supreme Court has explained,

---

[12] *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985).

[13] *See In re S.A.A.*, 279 S.W.3d 853, 857 (Tex. App.—Dallas 2009, no pet.).

When dividing marital property on divorce, trial courts may impose equitable liens on one spouse's *separate real property* to secure the other spouse's right of reimbursement for community improvements to that property. Although courts may impress equitable liens on separate real property to secure reimbursement rights, they may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right division.[14]

The decree provides,

Owelty of Partition

The Court, finds that it is necessary to impose an encumbrance for owelty of partition against the entirety of the property to secure the payment of the debt resulting from the award.

. . . .

The purpose of the encumbrance is to secure the payment of the debt of Respondent in favor of Petitioner of $37,700.00, resulting from the award of the real property in this divorce proceeding.

Jeff stipulated to an economic contribution of $109,032 against his separate real property. We therefore cannot conclude that the trial court erred by encumbering that real property to assure Jeff's payment to Desiree. We overrule Jeff's second issue.

**Child Support**

In his third issue, Jeff contends that the trial court abused its discretion by ordering him to pay $905.75 monthly to Desiree for child support because the trial court improperly concluded that Jeff's annual gross income is $60,000. A trial court's decision on child support will not be overturned absent an abuse of

---

[14] *... Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992) (citations omitted).

9

discretion.[15] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[16] An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[17]

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence.[18] Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.[19]

When asked by her trial counsel what she believed Jeff earns, Desiree testified,

> He has told me previously that he makes more than me, so based on that, and based on what he makes, plus you add back the gas, or parts of the gas, and his lunches that he charges to the business, as well as hunting trips, et cetera, that he charges to the . . . business—or puts on

---

[15] *... Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993).

[16] *... Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[17] *... E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

[18] *... In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).

[19] *... Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

the business, and he takes employees or friends, customers, I would say that he makes about $60,000.00 plus.

She further testified that the $60,000 figure includes "the gas, and other items, and cash, and any kind of trades, et cetera" as well as "rentals, property where he has extra income that's not necessarily reported for these buildings." She also testified that "he reports all of his gas, his lunches, meals, et cetera, under company expenses," that he accepts cash and trades out work, and that she believes that $60,000 is an accurate gross figure after expenses. On cross-examination, she explained,

> We worked full days. You have a lower income, and when you have months with your contract laborers, et cetera, then you can write it off to go to lunch. Or if you purchase gas for your vehicles, you can write off the gas. I do understand that that is permissible when you're a sole proprietor. And as a sole proprietor, you write all those items off separately.

> I also understand that he went on hunting trips; there's several of those with contract laborers, or customers where the gas or the dinner was included in the company expense.

> . . . .

> I understand his owner's draw is not necessarily his true income.

Finally, she testified that her information was based on what Jeff had told her and on what she had seen.

Jeff testified that he makes $520 per week after taxes, or about $34,000 per year. He also said that there is never any money left in the business at the end of the year that he could distribute to himself. The parties' 2007 joint tax return shows

11

a net income for the business of about $5,400.  Jeff testified that his accountant told him that he had to pay taxes on $27,000 in 2007.  The business's profit and loss statement for 2007 shows a net income of $48,535.73.  Again, there are no findings of fact and conclusions of law.

Based on the evidence, we hold that the trial court did not abuse its discretion to the extent that it resolved the conflicts in the evidence in favor of Desiree and concluded that Jeff's annual gross income was $60,000.  Jeff does not otherwise complain about the child support award.  We overrule his third issue.

## Conclusion

Having overruled Jeff's three issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  August 12, 2010